MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. Following a jury trial in the Circuit Court of Yazoo County, Daniel Banks was convicted of aggravated assault, in violation of Mississippi Code Annotated section 97-3-7(2) (Supp.2009). He was sentenced as a habitual offender to twenty years in the custody of the Mississippi Department of Corrections. Banks raises five issues on appeal. He claims the circuit court erred in (1) denying his theory-of-the-case instruction; (2) prohibiting
 
 him
 
 from impeaching a witness with evidence of bias; (3) denying a mistrial after mention of Banks’s criminal record; and (4) denying a mistrial during the State’s closing argument. Banks further argues that cumulative errors denied him a fair trial.
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. On May 19, 2007, George Palmer was stabbed during an altercation near his trailer in Yazoo City, Mississippi. Several witnesses to the event were intoxicated, and their recollections vary slightly. Palmer’s girlfriend, Adlean Johnson, lived with him and was with him that morning. For unknown reasons the two fought, and Palmer threw Johnson out of his trailer. Johnson then went with Banks to his mother’s home.
 

 ¶ 4. Johnson testified that Palmer followed her and later found her in bed with Banks. After discovering Johnson in bed with Banks, Palmer returned to his trailer, but Johnson refused to go with him. Palmer later showed up in Banks’s yard, and the two men exchanged words. According to Johnson, Banks was trying to make Palmer leave when a fight broke out, which led to Palmer being stabbed.
 

 ¶ 5. After Palmer left in an ambulance, Johnson returned to Palmer’s trailer to gather her belongings. Police officers stopped and questioned her, and Johnson told the officers that she was the person
 
 *679
 
 who had stabbed Palmer. Johnson later testified at trial that this was a false confession. Johnson explained to the jury that she did not stab Palmer. Rather, she claims that she saw Banks holding a knife and witnessed his mother wash blood from the knife. There was testimony that Johnson had been drinking at or around the time of the stabbing.
 

 ¶ 6. Palmer’s account of the event differed from Johnson’s. He testified that he found Johnson and Banks in bed together. Palmer claimed he then went home and threw Johnson’s belongings out of his trailer.
 

 ¶ 7. During this time, Palmer contends his friends Kenny and Quincy Langston were sitting in Palmer’s yard. After emerging from his trailer, Palmer talked with the two men. He then walked to the mailbox and saw Banks’s girlfriend sitting with Banks and Johnson. Palmer testified that he yelled: “You got some kind of nerve. Just came out the room with my girl, and you called your girl to come over to your house.” According to Palmer, at this point Banks ran over and stabbed him with a knife just below the sternum. Palmer testified that Banks came after him a second time with the knife, but only stabbed him once. Palmer claimed he had not been drinking and was unarmed.
 

 ¶ 8. Kenny testified that he witnessed Palmer call for Johnson from Palmer’s front yard. Kenny claimed he saw a man, who he later identified as Banks, hit Palmer. Palmer then ran and fell. Kenny went to break up the fight, but stopped when he saw Banks holding a bloody knife. Kenny testified that Johnson was not present when Palmer was stabbed.
 

 ¶ 9. Officer Jason Bright with the Yazoo City Police Department also testified at trial. Officer Bright arrived after the stabbing and spoke with Kenny, Quincy, and Palmer. He then left to search for Banks. Officers arrested Banks after finding him hiding under a mattress in a back room of his mother’s trailer.
 

 ¶ 10. Officer Bright returned to the scene that night after receiving calls that someone else had admitted stabbing Palmer. When he arrived, Johnson told him she was the one who stabbed Palmer. She also claimed she threw the knife in the river. Johnson was intoxicated, so detectives took her statement at a later time.
 

 ¶ 11. Banks’s mother, Martha Banks, testified for the defense. She claimed her son was not present when Palmer was stabbed. She testified that Johnson admitted to her that she stabbed Palmer, cleaned the knife, and threw the knife in the river. Banks’s mother also claimed she saw Palmer drinking that day, and she saw a man dressed almost identically to her son, who disappeared after the stabbing.
 

 ¶ 12. The jury found Banks guilty of aggravated assault. The circuit court denied Banks’s motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.
 

 DISCUSSION
 

 I. Jury Instruction
 

 ¶ 13. Banks first argues the circuit judge committed reversible error by denying his proposed theory-of-the-case instruction. This Court employs the following standard for reviewing challenges to jury instructions:
 

 Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the
 
 *680
 
 law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
 

 Lawrence v. State,
 
 3 So.3d 754, 758 (¶ 19) (Miss.Ct.App.2008) (quoting
 
 Austin v. State,
 
 784 So.2d 186, 192 (¶ 18) (Miss.2001)).
 

 ¶ 14. Though trial courts have great discretion as to the form and substance of jury instructions, the jury must be instructed in such a manner that it understands each party’s theory of the case.
 
 Brown v. State,
 
 768 So.2d 312, 315 (¶ 9) (Miss.Ct.App.1999). “If the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Lawrence,
 
 3 So.3d at 758 (¶ 19) (quoting
 
 Williams v. State,
 
 803 So.2d 1159, 1161 (¶ 7) (Miss.2001)).
 

 ¶ 15. Banks requested the circuit court instruct the jury that: “Daniel Banks’s theory of the case is that Adlean Johnson stabbed George Palmer with a knife and then threw the knife in the river and told officer [sic] they arrested the wrong man and if you so find you must find Daniel Banks not guilty.” The circuit judge determined the proposed jury instruction commented on the evidence. We agree.
 

 ¶ 16. This Court has previously held “[a]n instruction should not single out certain parts of the evidence to the point that it amounts to a comment on the evidence.”
 
 Sherron v. State,
 
 959 So.2d 30, 41 (¶ 50) (Miss.Ct.App.2006) (citing
 
 Manuel v. State,
 
 667 So.2d 590, 592 (Miss.1995)). Also, though a defendant is generally entitled to present jury instructions on his theory of the case, “a proposed instruction can be refused if it incorrectly states the law, is fairly covered elsewhere in other instructions, or is without foundation in the evidence.”
 
 Ray v. State,
 
 864 So.2d 1031, 1034 (¶ 9) (Miss.Ct.App.2004) (citing
 
 Davis v. State,
 
 849 So.2d 1252, 1254 (¶ 9) (Miss.2003)).
 

 ¶ 17. Here, the jury was properly instructed that it must find Banks not guilty if the State failed to prove he stabbed Palmer. Specifically, the circuit court instructed the jury that the State must prove beyond a reasonable doubt that Banks did “knowingly cause bodily injury to George Palmer ... by stabbing him with a knife.”
 

 ¶ 18. We find Banks’s proposed instruction was not only a comment on the evidence, but was also fairly covered by the substantive aggravated assault instruction given by the circuit judge. Accordingly, this issue is without merit.
 

 II. Impeachment Evidence
 

 ¶ 19. Banks attempted to elicit testimony from his mother that Palmer was biased against him. At trial, Banks’s counsel asked Banks’s mother:
 

 [Defense counsel]: Okay. Now, [Palmer] — has [Palmer] ever said anything to you about [Banks] prior to [the stabbing]?
 

 [Martha Banks]: Yeah, he told me he hated my son.
 

 ¶ 20. The State objected on hearsay grounds. Banks’s counsel responded that he was offering the testimony for impeachment purposes to exhibit Palmer’s alleged bias against Banks. The circuit court sustained the hearsay objection.
 

 ¶ 21. On appeal, Banks argues he should have been permitted to question his mother about Palmer’s alleged statement. Banks contends he was not attempting to prove Palmer’s statement was true, so it was not inadmissible hearsay.
 

 ¶ 22. Our standard for reviewing the admission or exclusion of evidence is abuse of discretion.
 
 Mason v. State,
 
 971 So.2d 618, 620 (¶ 11) (Miss.Ct.App.2007) (citing
 
 Yoste v. Wal-Mart Stores, Inc.,
 
 822
 
 *681
 
 So.2d 935, 936 (¶ 7) (Miss.2002)). We will affirm the circuit court’s ruling unless an abuse of the court’s discretion prejudiced the accused.
 
 Sones v. State,
 
 14 So.3d 773, 778 (¶ 24) (Miss.Ct.App.2009) (citing
 
 Ross v. State,
 
 954 So.2d 968, 992 (¶44) (Miss.2007)).
 

 ¶ 23. “It is a permissible means of impeaching a witness to attempt to show that the witness is, for some reason, biased or prejudiced for or against a party.”
 
 Moran v. State,
 
 822 So.2d 1074, 1077 (¶ 8) (Miss.Ct.App.2002);
 
 see also Scott v. State,
 
 796 So.2d 959, 962 (¶ 10) (Miss.2001); M.R.E. 616. Indeed, evidence of bias is admissible for attacking witness credibility, and our supreme court has instructed that bias is always material and may be proven by extrinsic evidence.
 
 Cantrell v. State,
 
 507 So.2d 325, 330 (Miss.1987). Furthermore, “[i]f the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay.” M.R.E. 801(c) cmt.
 

 ¶ 24. Banks’s mother’s proposed testimony was not elicited to prove the truth of the matter asserted. Instead, it was offered to show Palmer was allegedly biased against her son, which would have contradicted Palmer’s earlier testimony that he had no prior ill will toward Banks. We find that Banks’s mother’s proposed testimony was proper extrinsic evidence to impeach Palmer’s earlier denial of bias against Banks. M.R.E. 613. Thus, the circuit judge abused her discretion by prohibiting Banks from developing this impeachment evidence.
 

 ¶ 25. However, our supreme court instructs that this type of error may be deemed harmless beyond a reasonable doubt where the evidence of guilt is overwhelming.
 
 Clark v. State,
 
 891 So.2d 136, 142 (¶ 29) (Miss.2005). The United States Supreme Court has also held that denial of the opportunity to impeach for bias is subject to harmless-error analysis.
 
 Delaware v. Van Arsdall,
 
 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
 

 ¶ 26. Here, the State’s case was not solely dependent upon the credibility of Palmer’s testimony, and ample evidence was presented to support Banks’s conviction. In addition to Palmer’s testimony that Banks stabbed him, Kenny testified he saw Palmer fall. He also testified that when he tried to break up the fight, he saw Banks holding a bloody knife. Johnson claimed she too saw Banks holding the knife. She also testified she witnessed Banks’s mother washing blood off of the knife. Furthermore, the jury heard testimony that Banks was hiding under a mattress at his mother’s trailer at the time of his arrest. The United States Fifth Circuit Court of Appeals has held that hiding to elude capture can constitute flight.
 
 See United States v. Martinez,
 
 190 F.3d 673, 678 (5th Cir.1999). Furthermore, our supreme court has long instructed that evidence of flight is probative of guilt or guilty knowledge.
 
 See Brown v. State,
 
 690 So.2d 276, 294 (Miss.1996);
 
 Lee v. State,
 
 457 So.2d 920, 923 (Miss.1984).
 

 ¶ 27. Thus, due to the overwhelming evidence of Banks’s guilt, we find the complained of error to be harmless.
 

 III. Criminal Record
 

 ¶ 28. Banks next claims Johnson’s reference to his criminal record and the prosecutor’s corrective actions during later questioning were each independent grounds for a mistrial. During its direct examination of Johnson, the State asked Johnson why she had given a previous false confession. Johnson claimed she lied to the officers because she was mad at Palmer and because she knew Banks “had a prior record and [she] didn’t want him to
 
 *682
 
 get in deeper trouble.” At this point, Banks objected to the testimony, and the circuit court sustained the objection. The State asked that Johnson’s statements be stricken, and the circuit judge instructed the jury to disregard this testimony. Banks’s attorney then requested a mistrial, which was denied by the circuit court.
 

 ¶ 29. This Court will only reverse on the failure to grant a mistrial if there was an abuse of discretion.
 
 Pittman v. State,
 
 928 So.2d 244, 249 (¶ 11) (Miss.Ct.App.2006) (citing
 
 Bass v. State,
 
 597 So.2d 182, 191 (Miss.1992)). “Trial judges are better situated to decide whether or not a trial should be discontinued.”
 
 Id.
 
 (citing
 
 Schwarzauer v. State,
 
 839 So.2d 980, 982 (Miss.1976)).
 

 ¶ 30. We agree with Banks that a prosecution witness’s statement about a defendant’s criminal record is generally improper and inadmissible.
 
 Forbes v. State,
 
 771 So.2d 942, 952 (¶ 33) (Miss.Ct.App.2000) (citing
 
 Reynolds v. State,
 
 585 So.2d 753, 754-55 (Miss.1991)). However, “[w]here the witness refers briefly to another crime, and the testimony was not purposely elicited by the district attorney to prove the defendant’s character, no reversible error occurs.”
 
 Hancock v. State,
 
 964 So.2d 1167, 1179 (¶27) (Miss.Ct.App.2007) (quoting
 
 Hobson v. State,
 
 730 So.2d 20, 24 (¶ 10) (Miss.1998)). We point out that Johnson made no reference to any specific crimes. Furthermore, we cannot glean from the record that the State was attempting to attack Banks’s character by asking Johnson why she had given the false statement. Indeed, this question seems both logical and relevant in light of Johnson’s previous inculpatory statement and later recantation.
 

 ¶ 31. In response to Johnson mentioning Banks’s criminal history, the prosecutor resumed questioning and advised Johnson: “That’s not important. This is a totally different case. Okay? So we’re not worried about any — -we’re just worried about what happened that night. Okay?” The defense objected at this point, and the circuit court sustained the objection and instructed the jury to disregard the prosecutor’s questions. Again, Banks requested a mistrial which the circuit court denied.
 

 ¶ 32. While it appears the State was attempting to confine the witness to the case at hand, its method of questioning is certainly open to interpretation. But we note that the circuit judge was quick to instruct the jury to disregard this exchange. Unless there is evidence to the contrary, it is presumed the jury followed the circuit judge’s instructions when reaching its verdict.
 
 Reid v. State,
 
 266 So.2d 21, 28 (Miss.1972). “It is well settled that when the trial judge sustains an objection to testimony and he directs the jury to disregard it, prejudicial error does not result.”
 
 Pittman,
 
 928 So.2d at 250 (¶ 12) (quoting
 
 Estes v. State,
 
 533 So.2d 437, 439 (Miss.1988)). We believe this same rationale applies to questions asked by attorneys. Based on the remedial action exercised here, we cannot conclude the circuit judge abused her discretion in denying a mistrial.
 

 IV. The State’s Closing Argument
 

 ¶ 33. Banks claims the State improperly commented on his decision not to testify. He also contends the State attempted to shift the burden to him to prove his own innocence. During the State’s closing argument, the prosecutor told the jury:
 

 I got up this morning to put a suit on.... I couldn’t remember if I had worn it previously. I couldn’t remember if I had worn it earlier this week. I didn’t know. I asked my wife, “What did I have on, Baby?” Hey, that’s life.
 
 *683
 
 But he wants to demonize [Johnson] because she had a drinking problem. But that’s — use your common sense. They don’t have a defense in this.
 

 Banks objected to the argument, and the trial court sustained the objection. The circuit judge also instructed the jury to disregard this portion of the argument. Banks moved for a mistrial, which was denied.
 

 ¶ 34. Before addressing Banks’s specific complaint, we point out that attorneys are afforded “wide latitude in arguing their cases to the jury[,]” but “are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.”
 
 Ross v. State,
 
 16 So.3d 47, 61 (¶ 37) (Miss.Ct.App.2009) (quoting
 
 Bailey v. State,
 
 952 So.2d 225, 231 (¶ 7) (Miss.Ct.App.2006)). “[T]his Court gives deference to a trial court’s determination of whether a mistrial is warranted based upon any error in the proceedings that resulted in any ‘substantial and irreparable prejudice to the defendant’s case.’”
 
 Id.
 
 (quoting
 
 Sipp v. State,
 
 936 So.2d 326, 331 (¶ 7) (Miss.2006)).
 

 ¶ 35. Our supreme court has discussed the difference between commenting on a defendant’s failure to testify as opposed to responding to an asserted defense. In
 
 Dora v. State,
 
 986 So.2d 917, 923 (¶ 11) (Miss.2008), the Mississippi Supreme Court acknowledged:
 

 There is a difference between a comment on the defendant’s failure to testify and a comment on the defendant’s failure to put on a successful defense. The [S]tate is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to the defendant’s failure to testify by innuendo and insinuation. The question is whether the prosecutor’s statement can be construed as commenting upon the failure of the defendant to take the stand.
 

 (Internal quotations omitted).
 

 ¶ 36. We note the State made no reference to Banks’s choice not to testify, nor did it attempt to shift the burden of proof from the State to Banks. Instead, it is apparent from the record that the prosecutor was responding to defense counsel’s closing argument that Johnson was a drunk and that “alcohol affected her memory” of the events surrounding the stabbing. We simply cannot construe the State’s rebuttal argument about the perceived weakness of Banks’s defense as a comment on his failure to take the stand.
 

 ¶ 37. Furthermore, the circuit judge sustained defense counsel’s objection to the argument and instructed the jury to disregard the statement. Therefore, prejudicial error did not result.
 
 See Estes,
 
 533 So.2d at 439.
 

 V. Cumulative Error
 

 ¶ 38. Banks argues the cumulative effect of errors in his trial warrants reversal. Under the cumulative-error doctrine, individual errors not reversible themselves, “may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial.”
 
 Harris v. State,
 
 970 So.2d 151, 157 (¶ 24) (Miss.2007) (quoting
 
 Ross,
 
 954 So.2d at 1018 (¶ 138)). “However, a necessary predicate to an inquiry of that nature is a determination that multiple errors in the conduct of the trial, in fact, occurred.”
 
 Sheffield v. State,
 
 844 So.2d 519, 525 (¶ 16) (Miss.Ct.App.2003). Having found harmless error on only one of Banks’s claims, there was no accumulation of errors. Thus, we find Banks was afforded a fundamentally fair trial, and this issue is without merit.
 

 
 *684
 
 ¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY. IRVING, J., NOT PARTICIPATING.